UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| SAMANTHA C. WILSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:19 CV 1000 RWS |
| | ) | |
| ANDREW SAUL, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Samantha Wilson brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the Commissioner's decision denying her application for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income (SSI) under Title XVI of the Act, 42 U.S.C. §§ 1381 et seq. Sections 205(g) and 1631(c)(3) of the Act, 42 U.S.C. §§ 405(g) and 1383(c)(3), provide for judicial review of a final decision of the Commissioner. Because the Commissioner's final decision is supported by substantial evidence on the record as a whole, I will affirm the decision of the Commissioner.

## Procedural History

Plaintiff was born in 1986 and alleged she became disabled beginning July 24, 2015, at the age of 29, because of fibromyalgia, bilateral leg injury, peroneal nerve damage, anxiety, and depression.

After plaintiff's application was initially denied, she received a hearing before an ALJ on July 13, 2018. The ALJ issued a decision denying benefits on October 30, 2018. On March 20, 2019, the Appeals Council denied plaintiff's request for review. The ALJ's decision is the final decision of the Commissioner. 42 U.S.C. § 405(g).

In this action for judicial review, plaintiff contends that the ALJ erred in her determination at step 5 of the analysis by relying on the vocational expert's testimony. Plaintiff also contends that the ALJ erred in the evaluation of her credibility. Plaintiff asks that I reverse the Commissioner's final decision and remand the matter for further evaluation. For the reasons that follow, I will affirm the Commissioner's decision.

## Medical Records and Other Evidence Before the ALJ

With respect to the medical records and other evidence of record, I adopt plaintiff's recitation of facts set forth in her Statement of Material Facts (ECF #19) as they are admitted by the Commissioner (ECF #23). These statements provide a fair and accurate description of the relevant record before the Court. Additional

specific facts will be discussed as needed to address the parties' arguments.

## Discussion

A.    <u>Legal Standard</u>

To be eligible for disability insurance benefits under the Social Security Act, plaintiff must prove that she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Secretary of Health & Human Servs.,* 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual will be declared disabled "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity. If the claimant is working, disability benefits are denied. Next, the Commissioner decides whether the

claimant has a "severe" impairment or combination of impairments, meaning that which significantly limits her ability to do basic work activities. If the claimant's impairment(s) is not severe, then she is not disabled. The Commissioner then determines whether claimant's impairment(s) meets or equals one of the impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1. If claimant's impairment(s) is equivalent to one of the listed impairments, she is conclusively disabled. At the fourth step, the Commissioner establishes whether the claimant can perform her past relevant work. If so, the claimant is not disabled. Finally, the Commissioner evaluates various factors to determine whether the claimant is capable of performing any other work in the economy. If not, the claimant is declared disabled and becomes entitled to disability benefits.

I must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). Determining whether there is substantial evidence requires scrutinizing analysis. *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007).

I must consider evidence that supports the Commissioner's decision as well

as any evidence that fairly detracts from the decision. *McNamara v. Astrue*, 590

F.3d 607, 610 (8th Cir. 2010). If, after reviewing the entire record, it is possible to

draw two inconsistent positions and the Commissioner has adopted one of those

positions, I must affirm the Commissioner's decision. *Anderson v. Astrue*, 696

F.3d 790, 793 (8th Cir. 2012). I may not reverse the Commissioner's decision

merely because substantial evidence could also support a contrary outcome.

*McNamara*, 590 F.3d at 610.

When evaluating evidence of pain or other subjective complaints, the ALJ is

never free to ignore the subjective testimony of the claimant, even if it is

uncorroborated by objective medical evidence. *Basinger v. Heckler*, 725 F.2d

1166, 1169 (8th Cir. 1984). The ALJ may, however, disbelieve a claimant's

subjective complaints when they are inconsistent with the record as a whole. *See*

*e.g., Battles v. Sullivan*, 902 F.2d 657, 660 (8th Cir. 1990). In considering the

subjective complaints, the ALJ is required to consider the factors set out by *Polaski*

*v. Heckler*, 739 F.2d 1320 (8th Cir. 1984), which include:

> claimant's prior work record, and observations by third parties
> and treating and examining physicians relating to such matters
> as: (1) the claimant's daily activities; (2) the duration,
> frequency, and intensity of the pain; (3) precipitating and
> aggravating factors; (4) dosage, effectiveness and side effects of
> medication; and (5) functional restrictions.

*Id.* at 1322. When an ALJ explicitly finds that the claimant's testimony is not

credible and gives good reasons for the findings, the court will usually defer to the

ALJ's finding.  *Casey v. Astrue*, 503 F.3d 687, 696 (8th Cir. 2007).  However, the ALJ retains the responsibility of developing a full and fair record in the non-adversarial administrative proceeding.  *Hildebrand v. Barnhart*, 302 F.3d 836, 838 (8th Cir. 2002).

B.      ALJ's Decision

       In her written decision, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of July 24, 2015.  The ALJ found plaintiff's fibromyalgia and/or myositis, chronic pain syndrome, complex regional pain syndrome, peripheral neuropathy, neuralgia, migraines, obesity, major depressive disorder, generalized anxiety disorder, posttraumatic stress disorder, and alcohol use disorder to be severe impairments, but determined that they did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 17.)  The ALJ found plaintiff to have the RFC to sedentary work with the following limitations:

> occasionally balance and stoop, but no kneeling, crouching, or crawling; occasionally climb entry ramps and stairs, but no climbing ladders, ropes, or scaffolds; no overhead reaching bilaterally; occasional pushing and pulling with the upper and lower extremities within the sedentary weight limits; and understand, remember, and carry out simple and routine instructions and tasks, as long as there are no fast-paced production requirements, so no production rate pace work such as assembly line work.

(Tr. 19.)  The ALJ relied upon vocational expert testimony to support a conclusion

that plaintiff could perform work as cashier, telephone solicitor, and food and

beverage order clerk.  (Tr. 26.)  The ALJ then made the following finding:

> Pursuant to SSR 00-4p, I have determined that the vocational expert's
> testimony is generally consistent with the information contained in the DOT.
> With respect to his testimony regarding overhead reaching, fast-paced
> production requirements, absenteeism, and rest periods, the vocational
> expert relied on his knowledge, training, and experience.
>
> The vocational expert testified that although the DOT classifies cashier jobs
> as light work, in actuality, 10% of cashier jobs in the national economy are
> performed at the sedentary level.  The vocational expert testified that
> similarly, the DOT classifies the telephone solicitor job as semiskilled work
> with a SVP of 3, but 50% of those jobs can be learned within 30 days at the
> SVP 2 level.  I accept the vocational expert's explanation and deviation from
> the DOT because it is based on his knowledge, training, and experience.

(Tr. 26.)  Based on the vocational expert's testimony, the ALJ concluded that

plaintiff was not disabled.  (Tr. 26-27.)

Plaintiff claims that this decision is not supported by substantial evidence

because the ALJ improperly relied upon the vocational expert's testimony at step 5

of the analysis and improperly assessed her credibility.

C.     Vocational Expert's Testimony

Plaintiff first argues that the ALJ erred by relying on the VE's testimony that

she could perform the jobs of cashier, telephone solicitor, and beverage order clerk

at step 5 of the analysis.  In particular, plaintiff challenges the VE's testimony that

she could perform the job of cashier, which is described in the Dictionary of

Occupational Titles (DOT) as performed at the light exertional level, while the ALJ's hypothetical to the VE and RFC assessment found plaintiff capable of only sedentary level work, with additional limitations. Plaintiff also challenges the VE's assessment that telephone solicitor work can be learned within 30 days and the basis for the reduction in jobs to account for plaintiff's limitations.[1] During the hearing, the VE was given the following hypothetical by the ALJ and provided the following testimony:

> Q: Okay. All right. We have a younger individual. She's now 32, high school education. Past work is the hotel clerk job as you described. This first hypothetical is going to be a range of sedentary. Sedentary except occasional balance and stoop but no kneeling, crouching or crawling. Can occasionally climb entry ramps and stairs but no climbing ladders, ropes or scaffolds. No overhead reaching bilaterally. Occasional push or pull with the upper and lower extremities within the sedentary weight limits. And understand, remember and carry out simple and routine instructions and tasks as long as there are no fast paced production requirements so no production rate pace work, like, assembly work . . .
> Okay. With that hypothetical assuming a person of the claimant's age, education and work history would they be able to perform any of the past work.
>
> A; No, ma'am.
>
> Q: Any other work in the national economy that such an individual could perform?
>
> A: Yes, there would be.

---

[1] Work that is semi-skilled corresponds to a specific vocational preparation (SVP) time of 3-4. Work that is at the unskilled level requires less than 30 days to learn. Thus, the VE testified here that 50 % of the telephone solicitor jobs were unskilled, despite them DOT's classification as SVP 3-4 or semi-skilled.

Q: Can you give me three examples please?

A: Examples would be jobs such as sedentary cashiers. About 300,000 nationwide . . . That number is 211.462-010. Another example would be unskilled telephone solicitors. About 200,000 nationwide. That DOT number is 299.357-014 . . . A third example would be food and beverage clerks. About . . . 70,000 nationwide . . . That DOT number is 209.567-014.

Q: Okay. And those are all unskilled SVP 2 jobs?

A: They are although I've – I've varied from the DOT in those cases.

Q: Okay. And which ones did you vary from the DOT?

A: Unskilled cashiers in the DOT are categorized at the light level and in the actual labor market there are sedentary, light and medium exertional level, unskilled cashiers. The number that I cited is less – it's about 10 percent of the total number of unskilled cashiers. Telephone solicitors in the DOT are categorized as semi-skilled with a SVP of 3. In the actual labor market at least half of the telephone solicitors are unskilled. That is they require less than 30 days training before they can be fully functional and the number I cited is about one half of the telephone solicitors.

Q: Okay. And the food and beverage order clerk you didn't deviate?

A: No. ma'am.

(Tr. 61-63.) Upon questioning by plaintiff's counsel the VE offered the following testimony:

Q: Have you done any surveys of these jobs?

A: I've seen these jobs performed.

Q: Have you actually done any jobs of the cashier, telephone solicitor or food and beverage order clerk?

A: I haven't done any formal surveys but I've seen these jobs performed many, many times.

Q: And you say you've seen the job performed. Can you explain that?

A: I mean I've been in stores where cashiers were working. I've seen what they do probably thousands of times. I've been in restaurants and hotels where fast food – where order clerks – food and beverage clerks were working. I've seen what they do and –

Q: When you say you've seen what they do, you were not surveying the job itself you were just observing what occurred on the time when you were there?

A: That's correct.

(Tr. 68-69.) In her written decision, the ALJ relied upon the VE's testimony to support a conclusion that plaintiff could perform work as cashier, telephone solicitor, and food and beverage order clerk. (Tr. 26.) The ALJ then made the following finding:

Pursuant to SSR 00-4p, I have determined that the vocational expert's testimony is generally consistent with the information contained in the DOT. With respect to his testimony regarding overhead reaching, fast-paced production requirements, absenteeism, and rest periods, the vocational expert relied on his knowledge, training, and experience.

The vocational expert testified that although the DOT classifies cashier jobs as light work, in actuality, 10% of cashier jobs in the national economy are performed at the sedentary level. The vocational expert testified that similarly, the DOT classifies the telephone solicitor job as semiskilled work with a SVP of 3, but 50% of those jobs can be learned within 30 days at the SVP 2 level. I accept the vocational expert's explanation and deviation from the DOT because it is based on his knowledge, training, and experience.

(Tr. 26.) Based on the VE's testimony, the ALJ concluded that plaintiff was not disabled. (Tr. 26-27.)

Plaintiff argues that the ALJ erred in relying upon the VE's testimony because it was not based upon any research or surveys but was instead based upon his personal observations. The ALJ's hypothetical to the VE and her RFC assessment concluded that plaintiff could only perform work at a sedentary level, with modifications. Here, however, the ALJ did not substantially err when she accepted the VE's testimony that plaintiff could perform the work of cashier at a sedentary level with her credible limitations and that the job of telephone solicitor could be learned within 30 days, thus placing it in an SVP 2 level consistent with plaintiff's RFC that she can "understand, remember and carry out simple and routine instructions." Nor did the ALJ substantially err in accepting the VE's reduction in the number of available jobs in the national economy to account for plaintiff's limitations and resulting deviation from the job requirements as listed in the DOT.

When a vocational expert (VE) provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE's evidence and the information provided in the Dictionary of Occupational Titles. *Jones v. Astrue*, 619 F.3d 963, 977-78 (8th Cir. 2010). A vocational expert's testimony should generally be consistent with the DOT. *See Policy Interpretation Ruling: Titles II & XVI: Use of Vocational Expert & Vocational Specialist Evidence, & Other Reliable Occupational*

*Information in Disability Decisions*, SSR 00–4P, 2000 WL 1898704 (S.S.A. Dec. 4, 2000). When it is not, and "when there is an apparent unresolved conflict between the VE . . . and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE." *Welsh v. Colvin*, 765 F.3d 926, 929 (8th Cir. 2014) (quoting SSR 00-4p). The Eighth Circuit Court of Appeals has construed SSR 00-4p "as placing on the ALJ an affirmative responsibility to ask about 'any possible conflict' between VE evidence and the DOT, and to obtain an explanation for any such conflict, before relying on VE evidence to support a determination the claimant is not disabled." *Id.* (citing *Kemp v. Colvin*, 743 F.3d 630, 633 (8th Cir. 2014)). "When an ALJ has posed a hypothetical that accurately reflects his RFC finding, questioned the VE about any apparent inconsistencies with the relevant DOT job descriptions, and explained his decision to credit the VE's testimony, the ALJ has complied with SSR 00–4p, and we review his decision under the deferential substantial evidence standard." *Id.* at 930 (citing *Jones*, 619 F.3d at 978). "When VE testimony conflicts with the DOT, the DOT controls when the DOT classifications are not rebutted." *Jones*, 619 F.3d at 978. (internal quotation marks and citation omitted). However, the DOT definitions "are simply generic job descriptions that offer the appropriate maximum requirements for each position, rather than their range." *Hillier v. Social Sec. Admin.*, 486 F.3d 359, 366 (8th Cir. 2007) (internal quotation marks and citations

omitted). "Not all of the jobs in every category have requirements identical to or as rigorous as those listed in the Dictionary of Occupational Titles." *Id.* (internal quotation marks, citation, and alteration omitted).

Here, the ALJ acknowledged at the hearing and in her written decision the possible conflict between the VE's testimony and the DOT job descriptions for cashier and telephone solicitor. The VE relied upon his 40 years of experience to conclude that 10% of the jobs of cashier in the national economy are actually performed at the sedentary, rather than light, exertional level, and he testified that someone with plaintiff's RFC could perform the job of cashier at the sedentary level. Adjusting the number of jobs of cashier reported by the U.S. Department of Labor, Occupational Employment survey downwards 90 % to reflect only sedentary cashier positions still left 300,000 jobs in the national economy that someone with plaintiff's credible limitations could perform. The VE similarly relied upon his experience to conclude that half of the telephone solicitor jobs in the national economy can actually be learned within 30 days, thus placing them within the SVP 2 skill level consistent with plaintiff's limitations. Adjusting the Department of Labor's numbers downwards 50% to reflect telephone solicitor jobs at the SVP 2 level resulted in 200,000 jobs in the national economy that someone with plaintiff's credible limitations could perform. After considering the VE's explanation for his deviation from the DOT, the ALJ accepted the VE's

explanation for his deviation from the DOT and credited the testimony because it was based on his knowledge, training, and experience.

Plaintiff challenges the basis for the VE's testimony because it was based on his personal experience[2] rather than formal job surveys. The Eighth Circuit rejected a similar argument in *Welsh*, where the plaintiff argued that the ALJ improperly relied upon VE testimony because it was allegedly "based upon insufficient personal experience and unreliable scholarly literature." 765 F.3d at 929. The Eighth Circuit held that "these were fact issues for the ALJ to resolve" and affirmed the ALJ's decision because "SSR 00-4p specifically provides that, in crediting VE testimony over a DOT listing, an ALJ may rely on information about a particular job's requirements available in other reliable publications, information obtained directly from employers, or from a VE's experience in job placement or career counseling." *Id.* (internal quotation marks, citation, and alterations omitted). Similarly, in *Jones*, the VE reduced his estimate of the number of existing jobs because the claimant's RFC, unlike the DOT's description for those jobs, was limited to "occasional handling," an approach the Eighth Circuit concluded "was a perfectly acceptable basis for the [ALJ's] conclusions." 619 F.3d at 977-78. The

---

[2] Although the plaintiff argues that the VE's experience was simply as a "consumer," the VE actually testified that his opinions were based on his "own experience of more than 40 years of placing disabled people in the work place." (Tr. 64.) Plaintiff did not object to the VE's qualifications at the hearing.

VE followed the same approach in this case to conclude, based upon his extensive experience, that there were a reduced (but still significant) number of cashier and telephone solicitor jobs that someone with plaintiff's limitations could perform. Where, as here, the ALJ and counsel thoroughly questioned the VE about his deviation from the job descriptions in the DOT, the VE based his deviation from the DOT upon his 40 years of experience in the industry, and the ALJ explained the inconsistency between the VE's testimony and the DOT and then further explained the reasons why she credited the VE's testimony, the Court defers to the decision of the ALJ and concludes that substantial evidence on the record as a whole supports the ALJ's decision to rely upon the VE's testimony to find plaintiff not disabled. *See Welsh*, 765 F.3d at 929; *Jones*, 619 F.3d at 978.

Finally, plaintiff argues without support that none of the jobs meet her RFC assessment, but she fails to provide any explanation as to how the DOT description of food and beverage clerk is inconsistent with her RFC. The VE testified that he did not deviate from the DOT with respect to his finding that someone with plaintiff's credible limitations could perform the job of food and beverage clerk, and that 70,000 of those jobs exist in the national economy. As such, substantial evidence in the record as a whole supports the ALJ's finding that a significant number of jobs would be available in the national economy that plaintiff is capable

of performing, and the decision to deny benefits is affirmed.  *See Clay v. Barnhart*,

417 F.3d 922, 931 (8th Cir. 2005).

D.    Credibility Assessment

Plaintiff next argues that the ALJ erred in assessing her credibility and

discounting her complaints of pain as inconsistent with the medical evidence.

Plaintiff also contends that the ALJ improperly considered her alcohol use.

Plaintiff essentially argues that I should reweigh the evidence considered by the

ALJ in her determination of plaintiff's RFC, including her subjective complaints of

pain.  That is not my role.  *Hensley v. Colvin*, 829 F.3d 926, 934 (8th Cir. 2016).

"The credibility of a claimant's subjective testimony is primarily for the ALJ to

decide, not the courts."  *Pearsall*, 274 F.3d at 1218.  I must defer to the ALJ's

credibility determinations "so long as such determinations are supported by good

reasons and substantial evidence."  *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir.

2005).  When determining the credibility of a claimant's subjective complaints, the

ALJ must consider all evidence relating to the complaints, including the claimant's

prior work record and third party observations as to the claimant's daily activities;

the duration, frequency and intensity of the symptoms; any precipitating and

aggravating factors; the dosage, effectiveness and side effects of medication; and

any functional restrictions.  *Halverson v. Astrue*, 600 F.3d 922, 931 (8th Cir.

2010); *Polaski,* 739 F.2d at 1322.  While an ALJ need not explicitly discuss each

*Polaski* factor in his decision, she nevertheless must acknowledge and consider these factors before discounting a claimant's subjective complaints. *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010). "[T]he duty of the court is to ascertain whether the ALJ considered all of the evidence relevant to the plaintiff's complaints . . . under the *Polaski* standards and whether the evidence so contradicts the plaintiff's subjective complaints that the ALJ could discount his or her testimony as not credible." *Masterson v. Barnhart*, 363 F.3d 731, 738−39 (8th Cir. 2004). It is not enough that the record merely contain inconsistencies. Instead, the ALJ must specifically demonstrate in her decision that she considered all of the evidence. *Id.* at 738; *see also Cline v. Sullivan*, 939 F.2d 560, 565 (8th Cir. 1991). Where an ALJ explicitly considers the *Polaski* factors but then discredits a claimant's complaints for good reason, the decision should be upheld. *Hogan v. Apfel*, 239 F.3d 958, 962 (8th Cir. 2001).

Here, in formulating plaintiff's RFC, the ALJ properly evaluated plaintiff's subjective allegations of pain based upon her own testimony, the objective medical evidence of record, her daily activities, and treatment history. In an extensive analysis, the ALJ summarized plaintiff's testimony regarding her daily activities and subjective allegations of pain, along with the medical evidence of record, in determining plaintiff's RFC. Contrary to plaintiff's assertions, the ALJ did not discredit plaintiff's allegations of pain. Instead, she "credited the claimant's

17

allegations of chronic widespread pain" (Tr. 21.) and concluded that plaintiff's objective medical testing, which yielded only mild findings, and her examinations supported an RFC limited to only sedentary work with further limitations on balancing, stooping, climbing, kneeling, crouching, overheard reaching, and pushing and pulling.  The ALJ was not required to fully credit all of plaintiff's assertions regarding her limitations and her inability to work given her activities, which included performing light routine household chores such wiping the counters, washing clothes, doing the dishes, shopping, vacuuming, caring for household pets, using public transportation[3], handling finances, and spending time with friends.  *Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996).  "Acts such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking, are inconsistent with subjective complaints of disabling pain."  *Medhaug*, 578 F.3d at 817.

The ALJ also discounted plaintiff's credibility after noting that she continued to perform part-time, sedentary work after her alleged onset date.  "Acts which are inconsistent with a claimant's assertion of disability reflect negatively

---

[3] Plaintiff complains that the ALJ should have considered this as evidence of her disabling impairments because she alleged that she could not drive due to difficulty concentrating. However, plaintiff ignores the fact that driving was not an option since she did not have a valid driver's license.  The resolution of this fact issue was for the ALJ, not this Court, to resolve.

upon that claimant's credibility." *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001).

The ALJ also discounted plaintiff's allegations of disabling pain after reviewing plaintiff's failure to seek treatment from a pain management specialist in 2016 on the advice of her worker's compensation attorney. (Tr. 44, 502.) Prior to plaintiff's alleged onset date, plaintiff injured her shoulder at work and underwent physical therapy, reporting improvement. (Tr. 314-27, 323-25.) After a second work-related accident involving her shins and ankles (resulting in her alleged onset date), plaintiff again underwent physical therapy. (Tr. 331-46.) Plaintiff began treatment with a pain specialist, Thomas Johans, M.D., in November of 2015. (Tr. 388, 452.) Dr. Johans administered injections that lessened some of plaintiff's pain. (Tr. 401, 403.) However, she stopped treatment with Dr. Johans in December of 2015 and sought no treatment from a pain management specialist in 2016 on the advice of her worker's compensation attorney. (Tr. 44.) She returned to Dr. Johans again in January of 2017, telling him that she had received no therapeutic treatment in the interim. (Tr. 502.) Plaintiff sought no more treatment from Dr. Johans. In December of 2017, plaintiff presented to the emergency room for bilateral knee pain radiating down both legs into her feet. (Tr. 537.) She reported taking no pain medications but admitted that she self-medicated with alcohol. (Tr. 514.) Plaintiff's lack of treatment by a pain specialist and lack of

pain medication are inconsistent with her claims of disabling pain. *See Milam v. Colvin*, 794 F.3d 978, 985 (8th Cir. 2015). The ALJ also noted that plaintiff claimed to have suffered significant migraine headaches since she was a teenager but that her medical records had little mention of migraines until January of 2018. The ALJ may properly consider the fact that plaintiff did not seek or require aggressive treatment for her impairments. *See Clevenger v. Social Security Administration*, 567 F.3d 971, 976 (8th Cir. 2009).

In evaluating plaintiff's credibility, the ALJ also properly considered the fact that plaintiff had a trial spinal cord stimulator implanted in March of 2018, which greatly improved her pain (70% pain reduction in her leg and 40% in her back) and rendered her "functional to a much greater degree than in the past." (Tr. 557.) Plaintiff also reported improvement with migraines after Botox injections. (Tr. 599.) Impairments which can be controlled by medication or treatment are not considered disabling. *See Medhaug v. Astrue*, 578 F.3d 805, 813 (8th Cir. 2009).

The ALJ also properly considered plaintiff's noncompliance with medical instructions to seek professional help to stop her daily use of alcohol.[4] (Tr. 403, 493, 497.) "[A]n ALJ may properly consider the claimant's . . . failing to take

---

[4] Dr. Johans and Robert Poetz, D.O. urged plaintiff to seek treatment for alcohol use disorder, and Laura Tishey, Psy.D., diagnosed plaintiff with alcohol use disorder, moderate, and suggested that she continue with psychological services and consult a psychiatrist about her psychotropic medications.

prescription medications, seek treatment, and quit smoking." *Choate v. Barnhart*, 457 F.3d 865, 872 (8th Cir. 2006). Although plaintiff argues that the ALJ improperly discredited her physical impairments due to her alcohol use, the ALJ properly considered it in the context of assessing plaintiff's credibility in connection with the exacerbation of mental symptoms and the effectiveness of medication. (Tr. 22.)[5]

Plaintiff also claims that the ALJ improperly decided that she did not return to work secondary to marriage based on the following passage in the ALJ's decision:

> By way of background, the claimant was injured on the job in July 2015. She pursued a workers' compensation claim and was involved in a lawsuit. Her symptoms subsequently improved and she was released back to work, but did not return. She apparently quit working within a month of getting married, reporting that she was a "stay at home" wife.

(Tr. 20.) The ALJ did not determine that plaintiff stopped working because she married, but simply noted the timing of events "by way of background." Moreover, the ALJ ultimately determined that plaintiff's impairments prevented her from returning to work at her previous job, regardless of marriage. Because

---

[5] Plaintiff also argues that the ALJ erred by failed to evaluate the materiality of her alcohol use, but the Regulations only require a materiality finding when the ALJ finds a claimant to be disabled. 20 C.F.R. § 404.1535 (2018) ("If we find that you are disabled . . . we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability."). As the ALJ concluded that plaintiff was not disabled, such a finding was not required.

the ALJ did not rely upon plaintiff's marriage to conclude that she was not disabled, any mention of this background evidence amounts to, at most, "an arguable deficiency in opinion-writing technique [which] does not require [the Court] to set aside an administrative finding when that deficiency had no bearing on the outcome." *Hepp v. Astrue*, 511 F.3d 798, 806 (8th Cir. 2008) (internal quotation marks and citation omitted).

The ALJ also properly weighed the medical evidence in evaluating plaintiff's subjective allegations of pain. With respect to plaintiff's physical impairments, the ALJ gave great weight to the opinion of Paul Ganninger, M.D., who indicated that plaintiff needed to look for more sedentary work in April 2016. (Tr. 451.) The ALJ credited that opinion and limited plaintiff to sedentary work. (Tr. 19.) Although plaintiff argues that the ALJ failed to consider Dr. Ganninger's finding of trace edema back in September 2015, two months after her injury, the ALJ expressly acknowledged the trace edema and concluded that this episodic abnormal clinical presentation supported a limitation to sedentary work. (Tr. 21.) Plaintiff was also examined by Robert Poetz, D.O., in October 2016 for her worker's compensation claim. (Tr. 497.) .) During the examination, plaintiff exhibited good ranges of motion, negative straight leg raising, no sensory deficits, and normal reflexes. (Tr. 497.) Dr. Poetz opined that plaintiff should avoid pushing and pulling, heaving lifting, strenuous activity, overhead use of her arms,

and prolonged sitting, standing, walking, stooping, bending, squatting, twisting or climbing. (Tr. 497.) The ALJ gave some weight to Dr. Poetz's opinion, concluding that plaintiff's episodically occurring abnormal clinical presentations, including antalgic gait and joint tenderness, supported his recommended limitations of no heavy lifting or prolonged standing and walking and pushing and pulling limitations. (Tr. 23.) Accordingly, the ALJ limited plaintiff to sedentary work with occasional pushing and pulling limitations. (Tr. 23.) The ALJ disregarded Dr. Poetz's opinion with respect to a limitation on prolonged sitting as vague and inconsistent with the record as a whole, including plaintiff's activities of daily living and efficacy of treatment. (Tr. 24.) In June 2018, Mark Tobin, LPC, CC-MHC, opined that plaintiff could only sit or stand for one hour at a time before needing a break. (Tr. 574.) He also stated that plaintiff needed a mid-day break and could not lift, pull, hold objects, travel alone, or work. (Tr. 573-77.) The ALJ afforded little weight to Mr. Tobin's opinions as to plaintiff's physical impairments as he was plaintiff's mental health counsellor and his RFC assessment stated that he "deferred to treating physician for physical input" and "referred to pain management doctor" regarding plaintiff's specific physical limitations. (Tr. 575, 577.) It is the duty of the ALJ to weigh conflicting evidence and to resolve disagreements among medical opinions. *Cline v. Colvin*, 771 F.3d 1098, 1103 (8th Cir. 2014). Here, the ALJ did not substantially err when she assigned lesser weight

to some of Dr. Poetz's opinions and Mr. Tobin's opinions regarding plaintiff's physical limitations.

The ALJ also thoroughly weighed and considered the medical evidence of plaintiff's mental impairments when assessing her subjective allegations of pain. In October 2016, Laura Tishey, Psy.D., performed a consultative mental evaluation of plaintiff and opined that she had mild to moderate limitations in understanding and remembering instructions depending on the complexity, and sustaining persistence and concentration. (Tr. 493.) Dr. Tishey also concluded that plaintiff suffered a severe impairment in her ability to interact socially and adapt to her environment. (Tr. 494.) During the evaluation, plaintiff appeared alert, oriented, polite, and cooperative with good grooming, good eye contact, depressed mood, and congruent affect. (Tr. 491-92.) The ALJ gave some weight to Dr. Tishey's opinion and limited plaintiff to simple tasks and no fast-paced work, but she rejected Dr. Tishey's opinion with respect to plaintiff's social limitations as inconsistent with plaintiff's testimony that she goes out with friends and plays board games and has no difficulties getting along with others on the job. (Tr. 24.) A state agency medical consultant opined that plaintiff could perform moderately complex instructions and adapt to changes in a moderately demanding work setting that did not require sustained periods of social interaction with others. (Tr. 81-83, 86-87.) The ALJ afforded some weight to this opinion, concluding that it

supported a limitation to simple tasks and instructions. (Tr. 23.) It is the function of the ALJ to resolve conflicts between medical opinions, and the ALJ did not substantially err in evaluating the medical opinions regarding plaintiff's mental limitations. *See Finch v. Astrue*, 547 F.3d 933, 936 (8th Cir. 2008).

The objective medical evidence on the record as a whole also supports the ALJ's assessment that plaintiff was not as limited as she claimed. An MRI of plaintiff's brain performed on February 21, 2018 yielded normal results. (Tr. 596.) Ankle x-rays were negative, but MRIs showed mild soft tissue swelling and edema (Tr. 596, 328, 451, 496-97, 596.) Contrary to plaintiff's argument, the ALJ acknowledged and accounted for these mild abnormal findings when fashioning plaintiff's RFC by limiting her to sedentary work. (Tr. 21.) The ALJ also considered plaintiff's testimony that she needed a cane or walker to ambulate. Although plaintiff did not use a cane or walker at the hearing, she testified that she had just been prescribed one so the ALJ left the record open for plaintiff to supplement it with her prescription. (Tr. 22.) Plaintiff never supplemented the record with a prescription for a cane or walker. (Tr. 22.) The ALJ determined that a cane or walker was medically unnecessary given the medical evidence demonstrating that plaintiff had normal gait (Tr. 607.) and the successful spinal cord simulator trial. (Tr. 22.) Nevertheless, the ALJ went on to conclude that any use of a cane or walker was for brief acute symptom exacerbation only and that the

limitation to sedentary work accounted for any limitations arising from plaintiff's gait disturbance. (Tr. 22.) Plaintiff's relatively normal physical examinations and objective test results, despite her complaints of disabling limitations, were properly considered by the ALJ as one factor when formulating her RFC. *See Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005) (lack of corroborating medical evidence is one factor to consider when evaluating subjective complaints of pain).

Even if the ALJ could have drawn a different conclusion about plaintiff's credibility after reviewing the record as a whole, I may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary determination. *McNamara*, 590 F.3d at 610. Here, the ALJ discounted plaintiff's subjective complaints only after evaluating the entirety of the record. Where, as here, an ALJ seriously considers but for good reasons explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson*, 240 F.3d at 1147. The ALJ evaluated all of the medical evidence of record and adequately explained her reasons for the weight given this evidence. Substantial evidence in the record as a whole supports the ALJ's credibility determination, so I will affirm the decision of the Commissioner as within a "reasonable zone of choice." *Fentress v. Berryhill*, 854 F.3d 1016, 1021 (8th Cir. 2017) (citing *Owen v. Astrue*, 551 F.3d 792, 798 (8th Cir. 2008)).

## Conclusion

When reviewing an adverse decision by the Commissioner, the Court's task is to determine whether the decision is supported by substantial evidence on the record as a whole. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001). "Substantial evidence is defined to include such relevant evidence as a reasonable mind would find adequate to support the Commissioner's conclusion." *Id.* Where substantial evidence supports the Commissioner's decision, this Court may not reverse the decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because another court could have decided the case differently. *Id.*; *see also Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016); *Buckner v. Astrue,* 646 F.3d 549, 556 (8th Cir. 2011).

For the reasons set out above, a reasonable mind can find the evidence of record sufficient to support the ALJ's determination that plaintiff was not disabled. Because substantial evidence on the record as a whole supports the ALJ's decision, it must be affirmed. *Davis,* 239 F.3d at 966.

Accordingly,

**IT IS HEREBY ORDERED** that that the decision of the Commissioner is affirmed, and Samantha Wilson's complaint is dismissed with prejudice.

A separate Judgment is entered herewith.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 20th day of February, 2020.